J^PETTIGREW, J.
In this case, a biological father appeals from the trial court’s dismissal of his petition in opposition to the adoption of his daughter. For the reasons that follow, we reverse and remand.
FACTS AND PROCEDURAL HISTORY
On October 24, 1997, R.B.M. and R.J.M.M. (hereinafter referred to as “the adoptive parents”) filed an “Application for Court Approval of Adoptive Placement” in anticipation of the birth of M.L.’s child. The trial court signed the order approving the adoptive placement on November 3, 1997, and on November 6, 1997, M.L. gave birth to a baby girl (hereinafter referred to as “B.G.B.”). Subsequently, on November 19, 1997, M.L. executed a voluntary act of surrender in which she named D.C.B., her former husband, as the alleged father of B.G.B. D.C.B. also executed a voluntary act of surrender on the same date, informally acknowledging his paternity of B.G.B., and the child was placed with the adoptive parents. An “Interlocutory Decree of Adoption” was signed by the trial court on February 2,1998.
At some point after the child was placed with the adoptive parents, J.P.P. learned of the child’s birth and consulted an attorney. On April 11, 1998, counsel for J.P.P. notified counsel for the adoptive parents that J.P.P. was the biological father of B.G.B. and that he had not participated in any way in the acts of voluntary surrender that were executed by M.L. and D.C.B. Counsel for J.P.P. further inquired as to information regarding the docket number of the pending adoption and the parish in which it had been filed. The adoptive parents’ counsel responded indicating that the adoption proceeding had been filed in Tangipahoa Parish, but gave no further information regarding same. Thereafter, on May 8, 1998, J.P.P.’s counsel again requested specific information on the adoption proceeding and informed the adoptive parents’ counsel that he would be filing an opposition to the adoption on behalf of his client, J.P.P.
On September 10, 1998, J.P.P. filed a “Petition for Revocation of Interlocutory Decree” asserting that he was the biological father of B.G.B. J.P.P. alleged fraud on the part of M.L. and D.C.B. in signing the surrender papers. Attached to the petition was an 13“Acknowledgment of Paternity” executed by J.P.P. on September 8, 1998. In response to this petition, the adoptive parents filed an exception raising the objection of prescription alleging that J.P.P.’s action to annul the acts of voluntary surrender was untimely, as it was not filed within the ninety days allowed by La. Ch.Code art. 1148.[2] The exception was heard on April 26, 1999, and, in a judgment signed May 10, 1999, the trial court maintained the exception and dismissed J.P.P.’s petition. On the following day, May 11, 1999, the trial court signed an order submitted by J.P.P. directing J.P.P., M.L., and B.G.B. to undergo blood testing for the purpose of determining paternity. On July 12, 1999, the results of the blood tests from ReliaGene Technologies, Inc. were submitted indicating a 99.998 percent probability that J.P.P. was B.G.B.’s biolog *82 ical father. These results were filed into the record on July 22, 1999.
On September 13, 1999, a second petition was filed by J.P.P. entitled “Petition in Opposition to Granting of Interlocutory Decree or Final Decree of Adoption,” and a hearing was scheduled for November 8, 1999. Shortly thereafter, on October 18, 1999, the adoptive parents filed a “Petition for Final Decree,” which was set for hearing on December 6, 1999. Also on October 18, 1999, J.P.P.’s counsel filed a motion to withdraw as counsel of record, which motion was signed by the trial court on October 25, 1999. J.P.P.’s new counsel did not officially enroll until November 4, 1999, at which time counsel also filed a motion to continue the November 8 hearing. According to the record, this motion for a continuance was unopposed by counsel for the adoptive parents. Because of this continuance, counsel for the adoptive parents filed a motion to continue the hearing on the adoption, which was previously set for December 6, 1999.
On December 8, 1999, J.P.P. filed a supplemental and amending petition asserting that he was denied his constitutional right to due process of law in that he was not afforded a timely hearing on his opposition to the adoption. In response to J.P.P.’s ^petitions herein, the adoptive parents filed a general denial and urged exceptions raising the objections of prescription, res judicata, and no right of action. The trial court heard arguments on the exceptions on March 9, 2000, and took the matter under advisement. Thereafter, on April 25, 2000, the trial court signed a judgment denying the exceptions filed by the adoptive parents. In written reasons for judgment issued by the trial court on March 30, 2000, the court noted as follows:
It has always been the policy to afford litigants access to court. Liberative prescriptive or peremptive periods curtail or limits [sic] a litigant’s access to court and are to be strictly construed. The La. Children’s Codal articles cited [Articles 1262 and 1263] set forth time limitations which limit an attack on a final decree of adoption. A literal interpretation of those articles utilizing common meanings of the language used requires this court find that neither period applies in the instant case. There has been no final decree issued in the instant proceeding. Those time limitations necessarily require that the action be one to set aside a final decree. The instant action involves an objection by [J.P.P.] to the granting of a final decree. Furthermore even if the cited articles did control it would be difficult for this court to find that a biological father waited too long to object to an adoption [of] his child, when he first voiced his objection to the state through the Office of Community Services within six months of his discovery that he was the biological father, and within six months of the granting of the interlocutory decree.
A biological father has a right of action to object to the adoption of his child.
The only issues addressed by this court’s May 10, 1999, judgment granting the [adoptive parents’] exception of prescription were those claims attacking the validity of the acts of surrender. [J.P.P .] is not precluded by an exception of res judicata from asserting any other objection he may have. [Emphasis in original.]
In response to the trial court’s judgment, the adoptive parents filed a “Motion for Reargument/Reconsideration.” The parties briefed the issues and argued before the court at a hearing on June 19, 2000. In an amended judgment rendered on June 27, 2000, the trial court determined that the exception raising the objection of res judicata was “well founded” and dismissed J.P.P.’s petitions accordingly.[3]
*83 |KIt is from this judgment that J.P.P. has appealed, urging the following issues for our review:
1. Is the trial court’s failure to provide a timely “father’s hearing” manifest error?
2. Did the trial court violate the natural father’s due process rights by failing to provide a full hearing on his opposition to the adoption proceedings?
3. Is the Louisiana Children’s Code unconstitutional in its failure to provide equal protection under the laws for natural fathers in adoption proceedings?
DISCUSSION
The crucial issue for this court to decide is whether the trial court was correct in maintaining the adoptive parents’ exception raising the objection of res judicata. Thus, we must determine whether the trial court’s May 10, 1999 judgment acts as a res judicata bar to the subsequent opposition by J.P.P. to the adoption of his daughter.
Louisiana Revised Statute 13:4231 sets forth the factors to apply to a subsequent suit on the issue of res judicata and provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3)A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Prior to the amendments to Louisiana res judicata law effective in 1991, Louisiana law on res judicata was substantially narrower than federal law. Terrebonne Fuel & Lube, Inc. v. Placid Refining Company, 95-0654, 95-0671, pp. 11-12 (La.1/16/96), 666 So.2d 624, 631. The prior Louisiana doctrine of res judicata was based on a presumption of correctness rather than an extinguishment of the cause of action. A | (¡decided case precluded a second suit only if it involved the same parties, the same cause of action, and the same object of demand as the prior suit. Comment, The Louisiana Concept of Res Judicata, 34 La.L.Rev. 763, 765 (1974). However, under La. R.S. 13:4231, as amended in 1990 and effective January 1, 1991, res judicata bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. Thus, the chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. Terrebonne Fuel & Lube, Inc., 95-0654, 95-0671 at 12, 666 So.2d at 632.
Considering the above principles of law, we conclude that res judicata does not apply to the facts of the instant case. The judgment to which the trial court gives preclusive effect is the May 10, 1999 judgment whereby the court granted the adoptive parents’ exception raising the objection of prescription. ' In its written reasons for judgment following the March 9, 2000 hearing on the adoptive parents’ exceptions to J.P.P.’s petition in opposition to the adoption of B.G.B., the trial court eor- *84 reetly notes that the only issues addressed in its May 10, 1999 judgment “were those claims attacking the validity of the acts of surrender.” The court further recognizes that J.P.P. “is not precluded by an exception of res judicata from asserting any other objection he may have.” We agree.
The original pleading filed by J.P.P. in this matter was a “Petition for Revocation of Interlocutory Decree.” Nonetheless, the trial court treated this pleading as an attack on the validity of the acts of surrender executed by M.L. and D.C.B. The trial court apparently agreed with the adoptive parents’ position that the action was untimely because it was not filed within the ninety days allowed by La. Ch.Code art. 1148.[4] While |7the May 10 judgment was a final judgment with regard to an attack on the validity of the acts of surrender, the trial court clearly had no intention to completely dispose of J.P.P.’s opposition to the adoption of his child. This is evidenced by the trial court’s May 11, 1999 order wherein he directed that J.P.P., M.L., and B.G.B. undergo blood testing to determine paternity.
What is contained in J.P.P.’s second petition filed on September 13, 1999, and the subsequent supplemental and amending petition filed on December 8, 1999, is an opposition by J.P.P. to the adoption of his child, a subject that has nothing to do with the validity of the acts of surrender executed by M.L. and D.C.B. As the biological father of B.G.B., J.P.P. has a right to. oppose the adoption at issue and has the right to be heard regarding same. Thus, the judgment of the trial court sustaining the plea of res judicata is reversed. Having determined that the trial court erred in dismissing J.P.P.’s petition, we pretermit consideration of the issues raised by J.P.P. in his appeal.
DECREE
For the above and foregoing reasons, the judgment of the trial court maintaining the adoptive parents’ exception raising the objection of res judicata is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs associated with this appeal are assessed against the adoptive parents.
REVERSED AND REMANDED.

. Louisiana Children’s Code article 1148 provides: "No action to annul a surrender shall be brought for any reason after ninety days from its execution or after a decree of adoption has been entered, whichever is earlier.”

. There are no reasons for judgment included in the appellate record concerning the amended judgment rendered by the court on June 27, 2000. In brief, J.P.P. indicates to this court that he "has requested that the Record on Appeal be supplemented to include *83 the transcript of the hearing on this matter, and the court’s ruling from the bench.” However, this court has received no such supplementation of the record.

. We note that based on the recent decision of the Louisiana Supreme Court in In Re A.J.F., 2000-0948 (La.6/30/00), 764 So.2d 47, the trial court's finding in this regard may have been different. As pointed out by the court in In Re A.J.F., “the action for annulment of a surrender is only available to parents who allege that despite their execution of an act of surrender, 'he or she did not voluntarily or knowingly consent to the adoption of the child’ because of fraud or duress." In Re A.J.F., 2000-0948 at 19, 764 So.2d at 58 (emphasis in original). Thus, in the instant case, as J.P.P. was not a "parent" who executed the acts of surrender at issue, he would have no right of action to annul same. Nonetheless, the trial court’s May 10 judgment is a final judgment that was not appealed by J.P.P., and the issue is not currently before this court.